# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARHSALL DIVISION

| DATACLOUD TECHNOLOGIES, LLC, | Civil Action No. 2:24-cv-00384 |
|---|---|
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| IMPERVA, INC., | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff DataCloud Technologies, LLC (hereinafter, "Plaintiff" or "DataCloud") files this Complaint for patent infringement against Defendant Imperva, Inc. (hereinafter, "Defendant" or "Imperva") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Patents-in-Suit") issued by the United States Patent and Trademark Office ("USPTO"):

|  | U.S. Patent No. | Reference |
|---|---|---|
| 1. | 7,209,959 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7209959 |
|  |  | https://patents.google.com/patent/US7209959B1/en?oq=7%2c209%2c959 |
| 2. | 7,398,298 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7398298 |
|  |  | https://patents.google.com/patent/US7398298B2/en?oq=7398298 |
| 3. | 8,370,457 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8370457 |
|  |  | https://patents.google.com/patent/US8370457B2/en?oq=8%2c370%2c457 |

|   | **U.S. Patent No.** | **Reference** |
|---|---|---|
| 4. | 8,615,555 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8615555 <br><br> https://patents.google.com/patent/US8615555B2/en?oq=8%2c615%2c555 |

2. Plaintiff seeks monetary damages.

## PARTIES

3. DataCloud is a limited liability company organized and existing under the laws of the State of Georgia and maintains its principal place of business at 44 Milton Avenue, Suite 254, Alpharetta, Georgia, 30009 (Fulton County).

4. Based upon public information, Imperva is a corporation duly organized and existing under the laws of the state of Delaware since April 10, 2002.

5. Based upon public information, Imperva lists its Headquarters as Arboretum Plaza II, Suite 400, 9442 Capital of Texas Highway North, Austin, Texas 78759.[1]

6. Based upon public information, Imperva lists the location of one of its offices at 5800 Granite Parkway One, Suite 265, Plano, Texas 78024.[2]

7. Based upon public information, Imperva may be served through its registered agent, Corporation Service Company dba CSC - Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620 Austin, Texas 78701.

8. Based upon public information, Imperva may also be served through its registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, Delaware, 19808.

---

[1] https://www.imperva.com/company/locations/ (last visited May 14, 2024)
[2] *See* FN 1

## JURISDICTION AND VENUE

9. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

10. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

11. The Court has personal jurisdiction over Imperva because: Defendant has minimum contacts within the State of Texas and in this District; Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and in this District; Defendant has sought protection and benefit from the laws of the State of Texas; Defendant regularly conducts business within the State of Texas and within this District, and Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Texas and in this District.

12. More specifically, Defendant directly and/or through its intermediaries, ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its products and services in the United States, the State of Texas, and in this District.

13. Specifically, Defendant intends to do and does business in, has committed acts of infringement in this District directly, and offers its services, including those accused of infringement here, to customers and potential customers located in the United States, the State of Texas, and in this District.

14. Therefore, venue is proper in this District pursuant to 28 U.S.C. §1400(b).

## THE ACCUSED PRODUCTS

15. Based upon public information, Defendant owns, operates, advertises, and/or controls the website www.imperva.com through which it advertises, sells, offers to sell, provides

and/or educates customers about its website hosting platforms and the Accused Products. *See* **Exhibit A.**

16. Defendant offers at least the following products and services (hereinafter, the "Accused Products") that infringe one or more claims of the Patents-in-Suit:[3]

- Imperva cloud-based hosting websites for multiple Imperva domains;
- Imperva Web Application Firewall tools and products for web-based account roles and permissions;
- Cloud Web Application Firewall; and
- Email-based verification with Imperva SSL Certificate generation.

**COUNT I:   INFRINGEMENT OF U.S. PATENT NO. 7,209,959**

17. Plaintiff re-alleges and incorporates by reference each of the paragraphs 1-16 above as though fully set forth in their entirety.

18. U.S. Patent No. 7,209,959 (the "'959 patent") was issued on April 24, 2007 after full and fair examination by the USPTO of Application No. 09/542,858 which was filed on April 4, 2000. The '959 patent is entitled "Apparatus, System, And Method For Communicating To A Network Through A Virtual Domain Providing Anonymity To A Client Communicating On The Network." *See* '959 patent at p. 1.

19. The claims of the '959 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve networks and network systems by anonymizing network activity for individual clients and groups of clients for, among other reasons, security, traffic management, and routing purposes.

20. The written description of the '959 patent describes in technical detail each

---

[3] *See, e.g.,* https://www.imperva.com/products/plans/ (last visited May 21, 2024)

limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

21.     DataCloud owns all substantial rights, interest, and title in and to the '959 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

22.     DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '959 patent.

23.     Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '959 Patent, either literally or under the doctrine of equivalents, because it ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its cloud-based hosting websites for multiple Imperva domains ("Imperva Web Hosting").[4]



---

[4] *See* https://subdomainfinder.c99.nl/scans/2024-04-26/imperva.com  (last visited May 21, 2024)

24.     Upon information and belief, "Imperva Web Hosting") meets each and every step of at least Claim 1 of the '959 patent, either literally or equivalently. Defendant has infringed one or more claims of the '959 Patent because "Imperva Web Hosting") provides a method of, in response to a request (*e.g.,* "Client Hello") by a client to initiate communication with a destination website (*e.g.,* imperva.com, apps.imperva.com, sso.imperva.com, go. imperva.com, my. imperva.com), setting up a forwarding session (*e.g.*, from the internet to a WWW server) between the client (*e.g.*, internet device) and a destination server corresponding to the destination website (*e.g.*, WWW server), the forwarding session employing a forwarder disposed between (*e.g.*, a front-end server switch) the client and the destination server to forward packets sent from the client to the destination server and to forward packets sent from the destination server to the client (*e.g.,* bilateral communications); employing the forwarder (*e.g.,* front-end server switch), to transfer packets (*e.g.*, ethernet or others) between the client (*e.g.*, internet device) and the destination server (*e.g.*, WWW server) during the forwarding session, wherein the forwarding session is set up and implemented such that neither the client or the destination server is aware of the employment of the forwarder (*e.g.*, the WWW server has a direct TCP connection between a local IP address and a client IP address, each being different; thus, neither the client or the destination server is aware of the employment of the forwarder); employing a controller configured to communicate (*e.g.*, firewall) with the forwarder (*e.g.*, front-end server switch) and a domain name server (*e.g.*, a DNS), wherein the controller queries the domain name server to resolve the name of the destination website (*e.g.,* apps.imperva.com, sso.imperva.com, go.imperva.com, my.imperva.com) associated with the destination server (*e.g.*, WWW server) and initiates communication (*e.g.*, between the firewall and front-end server switch) with the forwarder in response to an answer from the domain name server to resolve the name of the destination website associated with the destination server;

employing a deceiver (*e.g.*, router) configured to communicate with the controller (*e.g.*, firewall) and the client (*e.g.*, internet device), wherein the deceiver receives the request by the client to initiate communication (*e.g.*, from the internet to the router) with the destination website (*e.g.*, apps.imperva.com, sso.imperva.com, go.imperva.com, my.imperva.com on a WWW server) and initiates the controller to query the domain name server to resolve the name of the destination website associated with the destination server (*e.g.*, the router both (i) receives the request and (ii) sends the data from the WWW server in a manner that makes the router appear to be the source of the data, when the source of the data is actually the WWW server); and in response to the controller (*e.g.*, router) receiving the answer from the domain name server and initiating communication with the forwarder initiating the forwarding session.

25. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

26. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

COUNT II:   **INFRINGEMENT OF U.S. PATENT NO. 7,398,298**

27. Plaintiff re-alleges and incorporates by reference each of the paragraphs 1-16 above as though fully set forth in their entirety.

28. U.S. Patent No. 7,398,298 (the "'298 patent") was issued on July 8, 2008 after full and fair examination by the USPTO of Application No. 11/690,803 which was filed on March 23, 2007. The '298 patent is entitled "Remote Access And Retrieval Of Electronic Files." *See* '298 patent at p. 1.

29. The claims of the '298 Patent are not directed to an abstract idea and are not limited

to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve the retrieval and transmission of data from and/or to a remote server.

30. The written description of the '298 Patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

31. DataCloud owns all substantial rights, interest, and title in and to the '298 Patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

32. DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '298 Patent.

33. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '298 Patent, either literally or under the doctrine of equivalents, because it ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its Imperva Web Application Firewall tools for web-based account roles and permissions ("Imperva WAF tools").[5]

34. Upon information and belief, the Imperva WAF tools meet each and every step of at least Claim 13 of the '298 patent, either literally or equivalently. Defendant's provision of the Imperva WAF tools has infringed and one or more claims of the '298 Patent because Defendant

---

[5] *See* https://www.youtube.com/watch?v=mGOX3iszARY&t=112s  (last visited May 21, 2024).

by its provision of the Imperva WAF tools provides a method for remotely controlling data directory structures (*e.g.,* webpages and functions accessible to discrete users) across at least one communications network (*e.g.,* Internet) by way of its administrative and user roles in the Imperva WAF tools.  The Imperva WAF tools have a computer server (*e.g.,* WWW server), the computer server coupled to the communications network (*e.g.,* Internet); a remote data directory structure management computing application (*e.g.,* the Imperva WAF dashboard) operating on the computer server (*e.g.,* WWW server) to process received requests for remote data directory management (*e.g.,* adding users, *etc.*) of desired data residing in directory structures by participating users (*e.g.,* users that have been assigned to any custom role in Role Management); and a profile data store (*e.g.,* a secure SQL server/database) comprising information relating to the data and data directory structures (*e.g.*, information on permissions, privileges, activations, files, and operations available to users in an organization) accessible to each of the participating users (*e.g.,* of an organization) wherein the profile data store is queried for the data directory structures accessible to each of the participating users (*e.g.,* role definitions indicate directory structure for each role to determine the user's abilities/privileges/permissions/activations), wherein further a single directory structure (*e.g.,* abilities/privileges/permissions/activations for users must be selected in the user/account settings) from among a plurality of the data directory structures associated with the profile data store (*e.g.,* the available account access settings for users) is selected by each of the participating users for modification (the invited user can accept the invitation or access).

35. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

36. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot

be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: <u>INFRINGEMENT OF U.S. PATENT NO. 8,370,457</u>

37. Plaintiff re-alleges and incorporates by reference each of the paragraphs 1-16 above as though fully set forth in their entirety.

38. U.S. Patent No. 8,370,457 (The "'457 patent") was issued on February 5, 2013 after full and fair examination by the USPTO of Application No. 11/717,911 which was filed on March 13, 2007. The '457 patent is entitled "Network Communication Through A Virtual Domain." *See* '457 patent at p. 1. A Certificate of Correction was issued on March 18, 2014.

39. The claims of the '457 Patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve networks and network systems by anonymizing network activity for individual clients and groups of clients.

40. The written description of the '457 Patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

41. DataCloud owns all substantial rights, interest, and title in and to the '457 Patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

42. DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '457 Patent.

43. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '457 Patent, either literally or under the doctrine of equivalents, because it ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its Cloud Web Application Firewall.[6]



44. Based upon public information, Cloud Web Application Firewall has infringed one or more claims of the '457 patent, including Claim 9, through its advanced firewall settings in the gateway because it establishes a forwarding internet protocol (IP) address (translated IP address) for a pre-defined combination of a client IP address (*e.g.,* 70.1.1.50) and a destination IP address (*e.g.,* 10.1.100), it identifies, in a data request received from the client IP address, the pre-defined combination, and in response to the identifying of the pre-defined combination, forward (*e.g.,* from "Host A" to the NAT Router) the data request *via* (*e.g.,* commands are configured to translate source addresses to the destination IP address for all packets with IP destination addresses in the particular subnet) the forwarding IP address to the destination IP address (*e.g.,* on "Host B").

45. Defendant's aforesaid activities have been without authority and/or license from

---

[6] *See* https://www.commoncriteriaportal.org/files/epfiles/Imperva%20Web%20Application%20Firewall%20(WAF)%20v14.7%20Security%20Target%20v1.8.pdf ; *see also* https://web.archive.org/web/20190905132755/https://www.imperva.com/resources/resource-library/datasheets/imperva-cloud-waf/ (last visited May 21, 2024).

Plaintiff.

46. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: <u>INFRINGEMENT OF U.S. PATENT NO. 8,615,555</u>

47. Plaintiff re-alleges and incorporates by reference each of the paragraphs 1-16 above as though fully set forth in their entirety.

48. U.S. Patent No. 8,615,555 (The "'555 patent") was issued on December 24, 2013 after full and fair examination by the USPTO of Application No. 12/169,074 which was filed on July 8, 2008. The '555 patent is entitled "Remote Access And Retrieval Of Electronic Files." *See* '555 patent at p. 1.

49. The claims of the '555 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve the retrieval and transmission of data from and/or to a remote server.

50. The written description of the '555 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

51. DataCloud owns all substantial rights, interest, and title in and to the '555 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

52.     DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '555 patent.

53.     Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '555 patent, either literally or under the doctrine of equivalents, because it ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its Imperva Web Protection and CDN services for email-based verification with Imperva SSL Certificate generation ("SSL Protection").[7]



54.     Upon information and belief, SSL Protection meets each and every step of at least

---

[7] *See* https://web.archive.org/web/20201209233505/https:/docs.imperva.com/bundle/cloud-application-security/page/onboarding/cloud-application-security.htm  (last visited May 21, 2024).

Claim 1 of the '555 patent, either literally or equivalently. The SSL Protection has infringed one or more claims of the '555 patent because it provides a method for providing remote data directory structure management capabilities to a requestor (*e.g.,* domain validation) across a communications network (*e.g.,* the Internet) to receive a first request over a communications network for management of data directory structures recorded on a memory device (*e.g.,* a secure SQL server/database stored on the memory of a server), query a profile data store from which is selected one of several of data directory structures and providing information about the selected data directory structure (*e.g.,* information on permissions, privileges, files, and operations available to users, account users, and administrators, for instance), receive a second request for a data file contained within the selected data directory structure and specifying an electronic address that is not associated with the requestor (*e.g.,* a request for a new user for permissions, privileges, access to files, or to control processes accessing files), sending the data file to the specified electronic address through a system that does not include the requestor (*e.g.,* where the user is not an authorized user), create and send a message that the data file has been sent that contains the electronic address and describes the system used, receiving a third request describing how to modify the data directory structure, and modify the data directory structure as requested (granting the permission, access, or control sought).

55. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

56. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

57. Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

58. Plaintiff respectfully requests the following relief:

   A. An adjudication that one or more claims of the Patents-in-Suit has been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

   B. An award of damages to be paid by Defendant adequate to compensate Plaintiff Defendant's past infringement, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Defendant's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

   C. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

   D. That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and,

   E. Any further relief that this Court deems just and proper.

Dated: May 23, 2024

Respectfully submitted,

*/s/ James F. McDonough, III*

James F. McDonough, III (GA 117088)*
Jonathan R. Miller (GA 507179)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866, -1863
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com

*For Plaintiff DATACLOUD TECHNOLOGIES, LLC*

\* admitted to the Eastern District of Texas

**LIST OF EXHIBITS**
  A. Webpage: https://www.imperva.com

**LIST OF ATTACHMENTS**
  1) Civil Cover Sheet
  2) Proposed Summons